**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **JAMES R. DOWNS,** ) | **CASE NO. 1:13CV1587** |
| ) | |
| **Plaintiff,** ) | **MAGISTRATE JUDGE** |
| ) | **GEORGE J. LIMBERT** |
| **v.** ) | |
| ) | |
| **CAROLYN W. COLVIN**[1]**,** ) | **MEMORANDUM OPINION & ORDER** |
| **ACTING COMMISSIONER OF** ) | |
| **SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

James R. Downs ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS this case to the ALJ for evaluation and analysis of notes and assessments from The Nord Center.

## I. PROCEDURAL AND FACTUAL HISTORY

Plaintiff filed his current applications for DIB and SSI on October 23, 2009, alleging disability beginning January 1, 2008 due to a learning disability, asthma, fibromyalgia and thyroid problems. ECF Dkt. #13 ("Tr." ) at 192-199, 260. He had previously received SSI from the age of 17 or 18 through the age of 26[2] and had previously filed applications for DIB and SSI ,with his most recent application filed on December 9, 2008 alleging the same disability date of January 1, 2008. *Id.* at 15-16, 172, 183-191. The SSA denied Plaintiff's current applications initially and on reconsideration. *Id.* at 108-138. Plaintiff requested an administrative hearing, and on September 20,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, replacing Michael J. Astrue.

[2] The Court notes that at the hearing before the ALJ in this case, Plaintiff's counsel represented that Plaintiff had received SSI from the age of 17 or 18 through the age of 26. Tr. at 15-16. Counsel explained that Plaintiff's benefits were terminated when he got married and his wife's earnings were concisdered, which exceeded the income level for SSI. *Id.* at 16; ECF Dkt. #18 at 3.

2011, an ALJ conducted an administrative hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id*. at 9, 139. On October 20, 2011, the ALJ issued a decision denying benefits. *Id*. at 84-94. Plaintiff appealed the decision, and on May 8, 2013, the Appeals Council denied review. *Id.* at 1-8.

On July 23, 2013, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On September 26, 2013, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #15. On November 8, 2013, Plaintiff, through counsel, filed a brief on the merits. ECF Dkt. #18. On January 8, 2014, Defendant filed a brief on the merits. ECF Dkt. #20. On January 22, 2014, Plaintiff, through counsel, filed a reply brief. ECF Dkt. #21.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

On October 20, 2011, the ALJ determined that Plaintiff suffered from borderline intellectual functioning ("BIF"), which qualified as a severe impairment under 20 C.F.R. §§404.1520(c) and 416.920(c). Tr. at 87. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.9256 and 416.926 ("Listings"). *Id*. at 88.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform heavy work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that the full range of heavy work was reduced by the following limitations: lifting up to 35 pounds frequently and up to 75 pounds occasionally; sitting, standing or walking up to six hours per eight-hour workday; no fast-paced work; work that is routine and repetitive; and work where instructions are presented verbally, by demonstration, or instructions that are simple and written. Tr. at 90. Based upon this RFC and the testimony of the VE, the ALJ concluded that Plaintiff could perform his past relevant work as a commercial cleaner and an order filler. *Id*. at 92. As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to DIB or SSI.

## **III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,*

486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.  LAW AND ANALYSIS

Plaintiff alleges that the ALJ erred in failing to address the opinion of Dr. Michael Hottois, Plaintiff's treating psychiatrist, and Diane Adams, Licensed Social Worker ("LSW") and Plaintiff's treating therapist. ECF Dkt. #18 at 14-17. Plaintiff asserts that he has treated with Ms. Adams at The Nord Center since December 12, 2008 when he began cognitive behavioral therapy after he was admitted to the Nord Center's Crisis Unit due to depressive symptoms. *Id*. at 8. Plaintiff asserts that the ALJ completely disregarded the treating physician rule by not even mentioning Dr. Hottois' opinion and by not addressing the opinion and treatment notes of Ms. Adams. *Id.* Plaintiff confines his arguments and his discussion of the evidence of record to these assertions of error only. *Id*. at 8, n.1 (Plaintiff notes that his brief discusses only the mental health records and only those mental health records that concern the ALJ's lack of analysis of the opinion of Dr. Hottois and Ms. Adams).

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007). If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial

-4-

evidence in [the] case record." *Wilson,* 378 F.3d at 544. When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Commissioner of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. Apr.28, 2010). For example, where an ALJ failed to describe "the objective findings that were at issue or their inconsistency with the treating physician opinions," remand has been ordered. *Barrett v. Astrue*, 2011 WL 6009645, at *6 (E.D.Ky. Dec.1, 2011). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec.*

-5-

*Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. March 15, 2011) (quoting *Rogers*, 486 F.3d at 243 ).

On August 24, 2011, Ms. Adams completed an assessment of Plaintiff's abilities to perform mental work-related activities. Tr. at 929-930. The form that Ms. Adams completed requested that she check "None," "Mild," "Moderate," "Marked," or "Extreme"as to each activity and the form defined each one of those terms. *Id*. at 929. Ms. Adams checked that Plaintiff had a "marked" degree of deterioration in his personal habits and he had "marked" limitations in his abilities to: maintain concentration and attention for extended periods; perform activities within a schedule, maintain regular attendance and be punctual; understand, carry out and remember instructions; respond to customary work pressures; respond appropriately to changes in the work setting; and to perform complex, repetitive or varied tasks. *Id*. at 929-930. She further checked that Plaintiff had "moderate" limitations in his abilities to: relate to other people; perform daily activities such as attending meetings or socializing with friends; sustain a routine without special supervision; and to respond appropriately to supervision and to co-workers. *Id*. Ms. Adams also checked that Plaintiff had "mild" limitations in his abilities to: use good judgment; perform simple tasks; and to behave in an emotionally stable manner. *Id*. at 930.

Ms. Adams further agreed that the severity of Plaintiff's limitations as she reported have existed since at least January 1, 2008, Plaintiff's conditions were likely to deteriorate if he were placed under stress, especially that of job stress, and Plaintiff would likely be absent more than three times per month due to his impairments or treatment for his impairments. Tr. at 930. She identified Plaintiff's mental health diagnoses as depressive disorder, not otherwise specified, major depression of a moderate and recurring nature, dysthymic disorder, and BIF. *Id*. at 930. She also noted that a psychological evaluation was performed on May 27, 2009. *Id.*

Ms . Adams signed the form, as did Lois Hart, a Clinical Nurse Specialist. Tr. at 930. Ms. Hart signed her name on the physician signature line. *Id*. Another signature appears below that of Ms. Hart, but that signature is illegible. *Id.* Beside that illegible signature is the handwritten date of September 19, 2011. *Id.*

Plaintiff first asserts that the ALJ violated the treating physician rule by ignoring this mental health assessment form which he attributes to Dr. Hottois. ECF Dkt. #18 at 14-15. However, the Court cannot discern the illegible signature to determine whether it is that of Dr. Hottois. Tr. at 930. Further, Plaintiff points to no documents in the record showing that Dr. Hottois is or was his treating psychiatrist and the medical records in Plaintiff's file from the Nord Center fail to identify Dr. Hottois on any of them or his signature. With no substantiation of a treating relationship between Dr. Hottois and Plaintiff, and no certainty that Dr. Hottois is in fact the individual who signed the mental health assessment form, the Court finds that the ALJ did not err in applying the treating physician rule to this assessment.

However, the Court is perplexed as to why the ALJ did not address the numerous progress notes in the record regarding Plaintiff's evaluation and treatment at The Nord Center by other psychologists and by Ms. Adams. Some of the medical records from the Nord Center show that a psychologist met with Plaintiff and administered psychological testing on May 22, 2009 and June 10, 2009. *Id.* at 622, 625. There are also progress notes dated January 27, 2009, March 9, 2009, May 14, 2009 and October 9, 2009 which appear to bear the signature of what appears to be a medical doctor who met with Plaintiff. *Id.* at 619, 627, 632, 634. The ALJ's decision does not indicate that she considered such records from The Nord Center.

The record also contains a host of progress notes from Ms. Adams. The Court is aware that Ms. Adams as a licensed social worker is considered an "other source" and not an "acceptable medical source" under the Social Security Regulations. *See* 20 C.F.R. §§ 404.1513(a)(d), 416.913(a)(d). Although information from "other sources" cannot establish the existence of a medically determinable impairment, their information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Social Security Ruling ("SSR") 06-03p . SSR 06-03p discusses opinion evidence from "acceptable medical sources" and from "other sources" and highlights the importance of some "other sources," such as licensed social workers:

> These regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR

-7-

> 404.1513(d) and 416.913(d). With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p.

In evaluating the opinions of "other sources" who have seen the claimant in a professional capacity, the ALJ should consider how long the source has known the individual, how frequently the source has seen the individual, how consistent the opinion of the source is with other evidence, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment. SSR 06-03p; *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir.2007). SSR 06–03p further provides that ALJs "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06–03p.

Defendant argues that the ALJ was not obligated to discuss the treatment notes of Ms. Adams or explain the weight that she gave Ms. Adams' opinion as the relevant Social Security Regulations state that the opinions of "other sources" *may* be considered, which is not mandatory language. ECF Dkt. #20 at 12, citing 20 C.F.R. §§ 404-1513 and 416.913. SSR 06-03p also provides that ALJs "*should* explain the weight given to opinions from these 'other sources', or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p [emphasis added]. This also is not mandatory language.

However, the ALJ does not mention any of the medical evidence from The Nord Center in her decision. She fails to discuss any assessments at that facility by psychologists or any of Ms. Adams' progress notes or the notes from other acceptable medical sources. She makes two fleeting

-8-

references to Plaintiff's statements at counseling that he performed automobile work and work for his father. Tr. at 89, 91. While the ALJ need not discuss every piece of evidence in the record, she cannot disregard the only treating medical evidence in the file without any indication that she considered such evidence. Defendant cites to the evidence in the record for the assertion that even if Ms. Adams' opinion and notes were considered, it does not support Plaintiff's claim for disability. ECF Dkt. #20 at 12-13. However, the Court cannot engage in such post-hoc rationalizations when the ALJ did not indicate reliance upon such information in her decision. *See Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 192 (6th Cir. 2009)("Where an 'administrative agency alone is authorized to make' a particular determination, the reviewing court 'must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.' [*SEC v.*] *Chenery* , 332 U.S. [194] at 196, 67 S.Ct. 1575 [91 L.Ed. 1995 (1947); *see also Williams v. Comm'r of Soc. Sec.*, 227 Fed. App'x 434, 464 (6th Cir. 2007)."

## **VI.    CONCLUSION**

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the instant case to the ALJ for consideration of the medical evidence from The Nord Center.

DATE: September 19, 2014

                                                 */s/George J. Limbert*
                                                GEORGE J. LIMBERT
                                                UNITED STATES MAGISTRATE JUDGE